Bohn, J.

INTRODUCTION

On February 12, 1999, an automobile owned and operated by the plaintiff was in a collision with a vehicle owned and operated by one Alison Hipp. At the time of the collision, the plaintiffs vehicle was insured under a standard Massachusetts automobile insurance policy issued by the defendant, Safety Insurance Company. Among other things, this policy provided that if anyone made a claim or sought payment under various provisions of the policy, the company had the *439 right to require that that person be examined by a physician selected by the Company.[1]
On February 19, 1999, the plaintiff filed an automobile loss notice with the defendant; and, on March 25, 1999, defendant’s claim adjuster wrote to plaintiffs counsel advising the plaintiff through his lawyer, that a medical examination had been scheduled for the plaintiff, to be held in Worcester, Massachusetts on April 21, 1999. The plaintiff failed to attend the examination.
On April 16, 1999,. counsel for the plaintiff wrote to the defendant requesting, on behalf of his client, that defendant send him the forms necessary to apply for personal injury protection (“PIP”) benefits made available to the plaintiff under Part 2 of the insurance policy. In response, a letter dated April 22, 1999, defendant’s claim adjuster notified plaintiffs counsel that a second appointment for a medial examination had been scheduled for the plaintiff, to be held in Wprcester, Massachusetts on May 12, 1999. The plaintiff failed to attend the examination.
On May 19, 1999, defendant’s claim adjuster wrote to plaintiffs counsel advising him that a third appointment for a medial examination had been scheduled for the plaintiff, to be held in Worcester, Massachusetts on June 2, 1999.[2] The plaintiff failed to attend the examination.
On June 14, 1999, a representative from the defendant company wrote to plaintiffs attorney:'
Dear Attorney Cariglia,
Safety Insurance Group disclaims and denies all obligations to My Anh Ho under Part 2 (Personal Injury Protection), of policy number 1919839, because she (sic) violated the policy condition of cooperation. She (sic) failed to appear at both appointments scheduled for May 12, 1999 and June 2, 1999 with an independent examiner although the policy states:
If anyone seeks payment under Personal Injury Protection, Bodily Injury Caused By An Uninsured, Medial Payments, or Bodily Injury Caused By An Underinsured Auto (Parts 2, 3, 6 or 12), we have a right to require that person to be examined by doctors selected by us. If anyone seeks continuing payment under these Parts, we may also require additional examinations at reasonable intervals.
In addition, Safety Insurance Group will not take further action regarding your claim and reserves its rights and privileges to disclaim any of the benefits presented under Part 2, 3, 6 or 12 of the Massachusetts Auto Policy.
If you have any questions, please contact me at extension 2047.
Sincerely,
Patricia Charles
On July 14, 1999, and with no acknowledgment of defendant’s letter of June 14, 1999, counsel for the plaintiff transmitted to defendant’s claims representative what he characterized as a “properly completed” PIP form. Through that claim, counsel sought payment of medical bills allegedly incurred by his client in the amount of $2,700.00, and compensation for lost wages in the amount of $2,324.70. The claim was denied.
On October 13, 1999, counsel for the plaintiff filed a civil suit in the East Brookfield Division of the District Court Department alleging a breach of contract and a failure on the part of the defendant to comply with provisions of G.L.c. 90, §34M.
On June 21, 1999, plaintiffs complaint in East Brookfield District Court was dismissed. The reasons for that dismissal, instructive to the manner in which the current motion will be disposed of, are contained in the District Court’s Findings and Rulings on Defendant’s Motion to Dismiss. Among other things, the District Court judge found that plaintiffs request for PIP benefits had been rejected by the defendant because the plaintiff had failed to attend three scheduled, independent examinations. Furthermore, the court found that on March 7, 2000, the plaintiff was to be deposed, but that plaintiffs counsel had contacted defendant’s counsel five minutes prior to commencement of the deposition informing him that the plaintiff would not attend. The parties agreed to a second date for the deposition. On the date of the re-scheduled deposition, however, and at approximately the time it was to begin, plaintiffs counsel telephoned defendant’s counsel informing him that the plaintiff would not attend.
On June 2, 2000, the matter was before the District Court judge for hearing on defendant’s motion to dismiss. Following that hearing, and apparently based on plaintiff s counsel’s “firm commitments” to produce the plaintiff for deposition, the District Court judge: 1) ordered the plaintiff to appear at a deposition on or before June 9, 2000 at a time and place to be agreed to by the parties; 2) scheduled trial for June 16, 2000 at 9:00 a.m.; and 3) reserved decision on the motion to dismiss.
In response to the Court’s Order following the hearing of June 2, 2000, the parties agreed that the deposition of the plaintiff would be conducted on June 8, 2000 at 2:00 p.m. At 2:15 p.m. on that date, however, plaintiffs counsel informed defendant’s counsel that plaintiff would not be appearing.
As noted above, on June 20, 2000, the District Court judge allowed the defendant’s motion to dismiss the District Court case. In doing so, the court concluded that the plaintiffs failure to comply with reasonable discovery requests and discovery orders “represents an intentional and unconscionable effort to prevent the right of discovery mandated by the court.” In dismissing the complaint, the District Court *440 judge invited defendant to file a motion to assess costs and attorneys fees; and, in an amended judgment dated August 29, 2000, assessed costs and fees against the plaintiff in the amount of $1,650.00
On June 29, 2000, plaintiff removed his action, pursuant to the provisions of G.L.c. 231, §104, to the Superior Court sitting in Worcester. The defendant now seeks summary judgment disposing of the case on the theory that there is no finding or decision to support removal.
Considered as a motion to dismiss for lack of jurisdiction, Mass. R. 12(b)(1), defendant’s motion will be allowed.
Discussion
First, the plaintiff had no right to remove the case to the Superior Court. Where applicable, G.L.c. 231, §104 allows removal from district court to superior court if a party has a claim asserted against him or her in excess of $25,000 and complies with certain procedures. Section 104 of chapter 231 is designed to allow parties, after the original claim has been filed, to transfer the action to superior court if new claims, counterclaims or cross claims are asserted against them that exceed $25,000. In the present case, the plaintiffs claims fall well below the $25,000 entry amount for superior court jurisdiction, there are no counterclaims, and plaintiff has no right to have the case removed to superior court.
Similarly, the plaintiff has no recourse in G.L.c. 231, §102C. Section 102C permits the Superior Court to transfer an action filed in the superior court to district court if there is no reasonable likelihood that recovery will exceed $25,000. Section 102C then provides that any party to the transferred action aggrieved by a “finding or decision” of the district court may, as of right, have the case retransferred for determination by the superior court. In the present case, the plaintiff filed his complaint in the district court. There was no transfer from the superior court to the district court pursuant to §102C, and there can be no retransfer.
Second, and in any event, the plaintiff is not entitled to a removal pursuant to §104 or to a re-transfer pursuant to §102C because there is no “decision or finding” by the district court on which removal or re-transfer can be predicated. In H. Sandberg & Son, Inc. v. Clerk of the District Court of Northern Norfolk, 12 Mass.App.Ct. 686, 687-89 (1981), the court discussed the phrase “finding or decision” as contained in § 102C and held that a plaintiff was not entitled to re-transfer a case to the superior court following a dismissal in the district court. In Sandberg, the court reasoned that allowing a party to re-transfer a case to superior court after dismissal would defeat the purpose of §102C by encouraging a practice under which counsel who are prepared to accept the risk of an adverse prima facie case against them could suffer judgments of dismissal or default in a district court and unilaterally delay the presentation of their evidence until they were before the Superior Court. Id. at p. 688. See also, Zazzara v. Townsend, 1994 Mass. App. Div. 61, 63 (1994) (no right to removal after default judgment); Farese v. Segal, 1990 Mass.App.Div. 196, 198 (1990) (default judgment in a decision or finding).
Such is the case here. Plaintiff failed to attend medical examinations scheduled on three different dates, April 21, May 12, and June 2, 1999. He failed to attend scheduled depositions on three separate occasions, March 7, May 9, and June 8, 2000. The District Court complaint has been dismissed. There is no reason in law, policy or poetry that should allowed him to proceed in this Court. His complaint will be dismissed with prejudice. Counsel for defendant may seek costs and fees by way of a motion filed within ten days of the docketing date of this Memorandum and Order.

Order

Considered as a motion to dismiss for lack of subject matter jurisdiction, defendant’s motion is allowed. Cost and fees may be assessed upon request.

 The right to have a claimant examined by a physician selected by the company is consistent with the provisions of G.L.c. 90, §34M which states, in relevant part, as follows:
“The injured person shall submit to physical examination by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due. Non-cooperation of an injured party shall be a defense to the insurer to any suit for benefits authorized by this section . . ." (emphasis added).

 In addition to the three letters written by the claim adjuster to plaintiffs counsel, a representative of Boston Medical Evaluations, the physician association responsible for coordinating the examinations scheduled for April 21, May 12 and June 9, 1999, wrote, on each occasion, to the plaintiff advising him of the date, time and place of the appointment.